# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

**TRAVELERS CASUALTY & SURETY**                                 **PLAINTIFF**
**COMPANY OF AMERICA**

**V.**                                                                            **NO. 3:16-CV-00080-DMB-RP**

**JIMMY DALLAN NELMS; JIMMY**
**MITCHELL; JOSEPH MCNAIR;**
**DANNY PETERS; AND JOHN DOES 1-10**                         **DEFENDANTS**

## ORDER ON MOTION FOR DEFAULT JUDGMENT

Before the Court are Travelers Casualty and Surety Company of America's motion for default judgment, Doc. #31, and its motion for hearing on the default judgment motion, Doc. #34. For the reasons below, the motion for default judgment will be granted in part and denied in part and the motion for hearing will be denied as moot.

## I
## Factual Allegations and Procedural History

### A. Filing of Complaint

On February 19, 2016, Travelers Casualty & Surety Company of America ("Travelers") filed in the United States District Court for the Southern District of Mississippi[1] a multi-count complaint against Jimmy Dallan Nelms, Jimmy Mitchell, Joseph McNair, Danny Peters, and John Does 1-10.[2] Doc. #1. In its complaint and document attached, Travelers alleges that on December 8, 2011, it issued to Alcorn County, Mississippi, a one hundred thousand dollar public

---

[1] This case was originally filed in the Southern District of Mississippi's Jackson Division. Doc. #1.

[2] The complaint contains seven counts. Count One alleges contractual indemnity, Count Two seeks specific performance, and Counts Three through Seven allege, respectively, breach of contract, assignment and subrogation, conspiracy, fraud, and conversion.

official bond[3] on behalf of newly elected supervisor Jimmy Dallan Nelms,[4] and that "Nelms executed a Public Official Application and Indemnity Agreement in order to obtain the Bond from Travelers." Doc. #1 at ¶¶ 10, 15; Doc. #1-1.

Travelers further alleges that "[o]n or about December 2, 2014, the State of Mississippi, through the Office of the State Auditor, made demand on Nelms and Travelers for the sum of $308,244.71, relating to claims of embezzlement or misappropriation by Nelms from Alcorn County." Doc. #1 at ¶ 11. According to Travelers, Nelms entered into joint and/or separate conspiracies with Jimmy Mitchell, Joseph McNair, and Danny Peters "to embezzle, misappropriate, convert and defraud money from Alcorn County." *Id*. at ¶ 12. After Travelers investigated the Alcorn County claim, "Alcorn County executed a Release and Assignment transferring, assigning and setting over to Travelers all the rights, demands and causes of action it may have against … the Defendants, in consideration for the payment by Travelers of $100,000.00, in full settlement of Travelers' liability under the Bond as a result of the acts of the Defendants." *Id*. at ¶ 13; Doc. #1-2.

### B. Service and Default

On March 3, 2016, Travelers filed a proof of service indicating that Peters was served the summons on February 25, 2016. Doc. #5. On March 9, 2016, Travelers filed a proof of service reflecting that Nelms was served the summons on March 2, 2016. Doc. #7. On March 24, 2016, Travelers filed an application with the Clerk of the Court for the entry of a default, along with a supporting affidavit averring that Nelms and Peters have "fail[ed] to answer or otherwise defend

---

[3] Section 19-3-5 of the Mississippi Code requires that each member of the board of supervisors supply a bond before entering office. Section 25-1-31 provides that "[a]ll bonds required by law to be made by all public officers ... shall be made in a surety company, authorized to do business in this state."

[4] The Public Official Bond and the Public Official Application and Indemnity Agreement refer to Nelms as "Dal Nelms." *See* Doc. #1-1; Doc. #1-3. The bond is not signed by Nelms.

2

Travelers' Complaint." Doc. #9; Doc. #9-1. That same day, the Clerk of the Court entered default against Nelms and Peters. Doc. #10.

On April 26, 2016, after the grant of a motion to change venue by Mitchell to which Travelers did not object, the case was transferred to the Northern District of Mississippi's Oxford Division. Doc. #13; Doc. #17; Doc. #18. Following transfer, on May 4, 2016, Travelers filed a motion for default judgment against Nelms and Peters.[5] Doc. #20. Because McNair, who had not defaulted, remained a defendant in this case and faced joint and several liability with the defaulting defendants, the Court denied Travelers' motion for default judgment without prejudice. Doc. #30.

On July 1, 2016, Travelers filed the instant motion for default judgment against Nelms and Peters. Doc. #31. On July 5, 2016, Travelers filed a stipulation of dismissal, signed on its behalf and on behalf of Mitchell and McNair, dismissing all claims against Mitchell and McNair with prejudice pursuant to Federal Rule of Civil Procedure 41(a). Doc. #32.

In its motion for default judgment, Travelers "requests that it be granted a default judgment against … Peters and Nelms, in the amount of $100,000," and that a final judgment be entered. Doc. #31 at 2. In support of its motion, Travelers submitted an affidavit from Barbara A. Check, a claim executive employed by Travelers, which repeats verbatim some of the allegations in the complaint. Doc. #31-1. On February 2, 2017, Travelers filed a motion for a hearing on its motion. Doc. #34.

---

[5] On May 6, 2016, Mitchell filed a response in opposition to Travelers' motion for default judgment arguing that because "joint and several liability is at issue, default judgment against some, but not all, defendants is not appropriate." Doc. #21. On May 31, 2016, Mitchell moved the Court to withdraw his opposition to Travelers' motion for a default judgment against Nelms and Peters because he and Travelers had settled all claims against him; thus, he had no objection to Travelers' motion for default judgment against Nelms and Peters. Doc. #28.

# II
# Analysis

Pursuant to "Rule 55 of the Federal Rules of Civil Procedure, federal courts have the authority to enter a default judgment against a defendant who has failed to plead or otherwise defend upon motion of the plaintiff." *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015). "Under Fifth Circuit law, there are three steps to obtaining a default judgment: first, default by the defendant; second, clerk's entry of default; and third, entry of a default judgment." *Gray v. MYRM Holdings, L.L.C.*, No. A-11-cv-180, 2012 WL 2562369, at *3 (W.D. Tex. June 28, 2012) (citing *N.Y. Life. Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996)) (emphases omitted). The first two steps have been satisfied here. Thus, the only issue left to consider is whether default judgment should be entered. In making this determination, the Court considers a three-question analysis: (1) "whether the entry of default judgment is procedurally warranted;" (2) "whether there is a sufficient basis in the pleadings for the judgment;" and (3) "what form of relief, if any, the plaintiff should receive." *J & J Sports*, 126 F. Supp. 3d at 813–14.

### A. Procedural Justification

In determining whether a default judgment is procedurally warranted, a court should consider: (1) "whether material issues of fact are at issue;" (2) "whether there has been substantial prejudice;" (3) "whether the grounds for default are clearly established;" (4) "whether the default was caused by a good faith mistake or excusable neglect;" (5) "the harshness of a default judgment;" and (6) "whether the court would think itself obliged to set aside the default on the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

First, where as here, a party fails to respond to or answer the complaint, there are no material issues of fact at issue. *See John Perez Graphics & Design, LLC v. Green Tree Inv.*

*Grp., Inc.*, No. 3:12-cv-4194, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013) ("Green Tree has not filed a responsive pleading or otherwise appeared in this case, and thus has not contested any facts presented in Plaintiff's Complaint."). Second, Defendants' failure to respond has caused prejudice to Plaintiff because "failure to respond ... threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests in pursuing its rights afforded by law." *Id*. Third, as mentioned above, the grounds for default have been clearly established. Fourth, there is no evidence before the Court that "the default was caused by a good faith mistake or excusable neglect." Fifth, Nelms and Peters have had at least a year to respond to the complaint; thus, "while default judgment is a harsh remedy, any harshness is mitigated [when they have] had substantial time to correct the default." *Helena Chem. Co. v. Aylward*, No. 4:15-cv-96, 2016 WL 1611121, at *2 (N.D. Miss. Apr. 21, 2016). Finally, in the event Nelms and Peters later seek to challenge the default, the Court is aware of no facts that would make it "obliged to set aside the default." Considering these factors, the Court finds that they all weigh in favor of default judgment being procedurally warranted in this case.

### B. Sufficient Basis in Pleadings

"In light of the entry of default, Defendants are deemed to have admitted the allegations set forth in Plaintiff's Complaint." *J & J Sports.*, 126 F. Supp. 3d at 815. Because documents attached to a complaint are deemed part of the pleadings,[6] a court may consider such attachments when determining whether default judgment is appropriate. *See RSDC Holdings, LLC v. Steinberg*, No. 16-9381, 2017 WL 117314, at *4 (E.D. La. Jan. 12, 2017) ("If these factual allegations and the materials attached to the pleadings establish that RSDC is the rightful owner ... then the Court will enter a default judgment against the defendants ...."). "However, [a]

---

[6] *See Gen. Elec. Capital Corp v. Posey*, 415 F.3d 391, 398 n.8 (5th Cir. 2005) ("Documents attached to a complaint are considered part of the plaintiff's pleadings.").

5

defendant is not held to admit facts that are not … well pleaded or to admit conclusions of law." *J & J Sports.*, 126 F. Supp. 3d at. at 814 (internal quotation marks omitted); *Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered."). The Court will consider each of Travelers' claims in order to determine if a sufficient basis in the pleadings exists for a default judgment to be entered. In this regard, Travelers asserts two type of claims: (1) contractual claims against Nelms brought on behalf of itself; and (2) various civil claims brought against Nelms and Peters which were assigned to Travelers by Alcorn County.

### 1. Contract Claims

#### a. Indemnification

Under Mississippi law,[7] "[a]n obligation to indemnify may arise from a contractual relation …." *Bush v. City of Laurel*, 215 So.2d 256, 259 (Miss. 1968). A party seeking indemnity "must prove that (1) it was legally liable to an injured third party, (2) that it paid under compulsion, and that (3) the amount it paid was reasonable." *Certain Underwriters at Lloyd's of London v. Knostman*, 783 So.2d 694, 698 (Miss. 2001).

The Public Official Application and Indemnity Agreement ("Agreement"), signed by Nelms, provides in relevant part:

> Indemnitors will at all times indemnify and exonerate [Travelers] from and against any and all loss, cost, expense of whatever kind which it may incur or sustain as a result of or in connection with the furnishing of the Bond and/or the enforcement of this Agreement, including unpaid premiums, interest, court costs and counsel fees, and any expense incurred or sustained by reason of making any investigation.

---

[7] "The Court applies the substantive law of Mississippi in this action since federal jurisdiction is founded on diversity of citizenship." *LPP Mortg. Ltd. v. TAZ, Inc.*, No. 2:14-cv-39, 2014 WL 4273266, at *3 (S.D. Miss. Aug. 28, 2014).

Doc. #1-3 at 4.

Travelers issued a public official bond in the amount of $100,000.00 on behalf of Nelms, which bound it to Alcorn County in the event Nelms failed to faithfully perform the duties of his office during his term as a supervisor. Doc. #1-1. When Nelms allegedly entered into joint and/or separate conspiracies to commit several crimes against Alcorn County, Travelers paid the $100,000.00 to Alcorn County. Doc. #1 at ¶ 13. Considering that the bond was for $100,000.00, and Travelers paid such amount, the Court considers $100,000.00 reasonable. *See Bush v. City of Laurel*, 215 So.2d 256, 259 (Miss. 1968) ("When one person is required to pay money which another person in all fairness should pay, then the former may recover indemnity from the latter in the amount which he paid."). As such, a sufficient basis in the pleadings exists for Travelers' entitlement to indemnification from Nelms based on the Agreement.

### b. Specific Performance

Travelers alleges that it is "entitled to specific performance by Nelms of the provisions of the Indemnity Agreement." Doc. #1 at ¶ 18. Specific performance is when a court requires "the performance of some specific act or prohibit[s] the doing of some specific act." *Morgan v. U. S. Fid. & Guar. Co.*, 191 So.2d 851, 854 (Miss. 1966).

Under the Agreement between Travelers and Nelms, Travelers has a right to demand that Nelms pays it the $100,000.00 which Travelers had to pay Alcorn County. The Court therefore finds that Nelms is required to specifically perform the terms of the Agreement as alleged in the complaint.[8]

### c. Breach of Contract

Under Mississippi law, the elements of a breach of contract claim are: (1) the "existence

---

[8] *See Employers Mut. Cas. Co. v. JVV Consulting-Constr. Mgmt., L.L.C.*, No. CIV.A. 11-79-JJB, 2012 WL 1028607, at *2–4 (M.D. La. Mar. 26, 2012).

of a valid and binding contract;" and (2) breach of that contract by the defendant. *Kmart Corp. v. Fulton Improvements, L.L.C.*, 605 F. App'x 374, 376 (5th Cir. 2015) (citation omitted).

As mentioned above, Nelms agreed to "indemnify and exonerate [Travelers] from and against any and all loss, cost, expense of whatever kind which it may incur or sustain as a result of or in connection with the furnishing of the Bond and/or the enforcement of this Agreement." Doc. #1-3 at 4. Travelers alleges that "[b]y refusing to indemnify Travelers for the expenses, court costs and counsel fees it incurred in connection with the Bond it issued to him, Nelms has breached the Indemnity Agreement with Travelers." Doc. #1 at ¶ 20.

The Court finds that Travelers has pled the existence of a binding contract and Nelms' breach of such contract. Accordingly, as to the claim of breach of contract, there is a sufficient basis in the pleadings for default judgment against Nelms.

### 2. Alcorn County Claims

Travelers alleges that "by virtue of its assignment and under principles of subrogation, [it] is entitled to recover the losses caused by the Defendants' acts of conspiracy, conversion and fraud."[9] Doc. #1 at ¶ 23. As evidence of its assignment Travelers submitted the "Release and Assignment" signed on behalf of Alcorn County, which provides in relevant part:

> In further consideration of the [$100,000.00] payment, [Alcorn County] does hereby transfer, assign and set over to [Travelers] all of its claims, rights, demands and causes of action against all persons, firms or corporations whomsoever arising out of or in any way connected with the Claim …. [Travelers] may pursue the Claims and Rights in its own name, or if it so elects, in the name of the undersigned.

Doc. #1-2 (emphasis omitted).

Regarding Travelers' subrogation argument, "[s]ubrogation is the substitution of one

---

[9] Travelers asserts assignment and subrogation as an individual count. However, it is clear that the arguments about assignment are not framed as a specific claim against the defendants but rather as the legal grounds for the claims asserted on Alcorn County's behalf.

person in place of another, whether as a creditor or as the possessor of any rightful claim, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and to its rights, remedies, or securities." *DeFoe v. Great S. Nat'l Bank*, 511 So.2d 912, 914 (Miss. 1987). Subrogation applies "wherever any person, other than a mere volunteer, pays a debt or demand which in equity or in good conscience should have been satisfied by another." *Id*. (internal quotation marks omitted). Considering the Assignment and Release, the Court finds that Travelers is entitled to recover losses caused by Peters and Nelms.

### a. Conspiracy

"[T]he elements of a civil conspiracy are: (1) two or more persons or corporations; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result." *Holloway v. Lamar Cty.*, No. 2:15-cv-86, 2015 WL 9094531, at *3 (S.D. Miss. Dec. 16, 2015) (citation and internal quotation marks omitted). "A civil conspiracy occurs when a combination of persons conspire for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully." *Multiplan, Inc. v. Holland*, No. 1:14-cv-5, 2016 WL 3983669, at *3 (S.D. Miss. July 25, 2016) (internal quotation marks omitted).

Travelers alleges that Nelms entered into joint and/or separate conspiracies with Mitchell, McNair, and Peters to embezzle, misappropriate, convert and defraud money from Alcorn County. Doc. #1 at ¶ 25. Travelers contends that the conspiracies involved "fraudulent culvert purchases; fraudulent rental of a paver; submission of fraudulent invoices related to electrical work; forgeries; fraudulent invoices for gravel and dirt hauling and equipment rentals related to the hauling and by submitting personal cell phone bills for payment by Alcorn County." *Id*. at ¶ 26. According to Travelers, the conspirators submitted "fraudulent invoices to Alcorn County on

behalf of Peters. The fraudulent invoices were knowingly submitted by Peters for tractor and equipment rentals that did not occur … [and] for services that were never performed." *Id*. at ¶ 31.[10] Travelers further alleges that the fraudulent invoices related to Peters totaled approximately $37,817.50. *Id*.

The Court finds that these factual allegations are sufficient to show that there was a plan between Nelms, Peters, and others to unlawfully obtain money from Alcorn County, and that as a result of this plan, Alcorn County suffered damages. Thus, the Court finds a sufficient basis in the pleadings for default judgment on conspiracy.

### b. Fraud

In order to establish a claim of fraud under Mississippi law, a plaintiff must establish the following elements by clear and convincing evidence: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that the representation be acted upon by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on the representation's truth; (8) the hearer's right to rely thereon; and, (9) the hearer's consequent and proximate damages." *Gamble ex rel. Gamble v. Dollar Gen. Corp.*, 852 So.2d 5, 10 (Miss. 2003); *Levens v. Campbell*, 733 So.2d 753, 761 (Miss. 1999).

When claiming fraud in federal court, the claim "must also satisfy the heightened pleading standard set out in Federal Rule of Civil Procedure 9(b): 'In allegations alleging fraud a

---

[10] Although generally referenced under the conspiracy claim, the specific facts relating to Nelms' and Mitchell's submission of fraudulent invoices on Peters' behalf are alleged under Travelers' fraud claim (Count Six). However, because the standard is notice pleading rather than factual pleading, the Court considered them with regard to Travelers' conspiracy claim. *See Berry v. Target Corp.*, __F. Supp. 3d. __, No. 1:16-cv-897, 2016 WL 5867425, at *4 (E.D. Va. Oct. 6, 2016) ("Defendants' final contention ... is that plaintiff failed to incorporate into her state law claims the factual allegations made elsewhere in the complaint, and hence the state law claims are too conclusory to survive a motion to dismiss. That argument is meritless. The complaint is reviewed as a whole, so the failure to incorporate the factual allegations is not fatal to the state law claims.").

party must state with particularity the circumstances constituting fraud or mistake.'" *Edge Adhesives, Inc. v. Sharpe Concepts, LLC*, No. 4:15-cv-405, 2015 WL 12743618, at *3 (N.D. Tex. Aug. 31, 2015) (citation and alteration omitted); *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) ("Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out."). The Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (internal quotation marks omitted); *see Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992) ("At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations … .") (internal quotation marks omitted).

Travelers alleges that Nelms and Mitchell entered into fraudulent conspiracies and/or scams to embezzle and defraud money from Alcorn County by (1) using County funds to purchase non-existent culverts from Mitchell, costing Alcorn County $22,717.80, which was split between Nelms and Mitchell and (2) using County funds to rent a paver from Mitchell's business from October 1, 2013 to July 3, 2014, that was never used, costing Alcorn County $10,000.00. Doc. #1 at ¶¶ 28–29.

Travelers also alleges that "Nelms, Mitchell, and McNair entered into a fraudulent scheme to embezzle and defraud money from Alcorn County by submitting fraudulent 3M Landscaping and Construction invoices to Alcorn County" for work that was never completed and for equipment rental, for which McNair would pay Nelms a portion of the money received from the fraudulent invoices. *Id*. at ¶ 30. Further, Travelers alleges that "Nelms and Peters entered into a fraudulent scheme to embezzle money from Alcorn County by submitting

11

fraudulent invoices to Alcorn County on behalf of Peters … for tractor and equipment rentals that did not occur." *Id*. at ¶ 31.

Lastly, Travelers alleges that Nelms "fraudulently devised a scheme to embezzle and defraud money from Alcorn County by having Alcorn County pay for his wife's personal cell phone bill … for 27 months," costing Alcorn County $2,347.82. *Id*. at ¶ 32. In this regard, Travelers alleges:

> On August 12, 2012, Nelms, acting as County Supervisor, added a line to the Alcorn County Board of Supervisors' cellular phone account at C-Spire Wireless. Nelms had the line named '2nd District on Call.' Nelms charged the purchase price of a new, iPhone 4s to the account. Nelms then gave the phone to his wife, Amy Nelms, to be used as her personal cell phone. Mrs. Nelms used the phone as a personal cell phone until it was seized by OSA Special Agents on July 16, 2014.

*Id*.

As it concerns the fraud claims against Nelms alleging the purchase of non-existent culverts from Mitchell and the submission of fraudulent 3M Landscaping and Construction invoices, as well as the fraud claim against Peters and Nelms alleging the submission of fraudulent tractor and rental equipment invoices, the details of the claims are not pleaded with the sufficient particularity required under Rule 9(b). Specifically, the complaint fails to allege when and where these fraudulent acts took place. Considering the fraud allegations related to Nelms, on behalf of Alcorn County, renting a paver from Mitchell's business that was never used, and Alcorn County paying Nelms' wife's cellular phone bill, the Court finds that there is a sufficient basis in the pleadings to support fraud claims against Nelms.

### c. Conversion

Mississippi courts have held that "[t]o make out a conversion [claim], there must be proof of a wrongful possession, or the exercise of a dominion in exclusion or defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand." *Cmty.*

*Bank, Ellisville v. Courtney*, 884 So.2d 767, 772–73 (Miss. 2004) (internal quotation marks). A claim for conversion "cannot be maintained without proof that the defendant either did some positive wrongful act with the intention to appropriate the property to himself, or to deprive the rightful owner of it …." *Id*. Furthermore, when a claim, such as conversion, is based on allegations of fraud, the heightened pleading standard of Rule 9(b) must be satisfied. *See Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009) ("Plaintiffs' Chapter 541 allegations are based on the identical misrepresentations and omissions as the fraud claims" and thus, are subject to heightened pleading standard of Rule 9(b)). Because Travelers' conversion claims are based on the same factual allegations as its fraud claims, the conversion claims are subject to the pleading requirements of Rule 9. *See* Doc. #1 at ¶ 35 (referencing "[t]he acts of the Defendants in Count Six").

Travelers contends that the acts alleged in its fraud claim "were acts to convert, for their own use, property and money of Alcorn County for value inconsistent with the rights of Alcorn County, with the intent or at least knowingly to damage Alcorn County." *Id*. These allegations generally state a claim for conversion. However, applying the heightened pleading standard to these claims, the Court concludes, as it did above, that only those allegations related to Nelms renting a paver, and Alcorn County paying Nelms' wife's cellular phone bill, survive.

### C. Relief

"A default judgment is a judgment on the merits that conclusively establishes the defendant's liability. But it does not establish the amount of damages." *U.S. For Use of M-Co Const., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Rather, "the burden of establishing damages rest[s] squarely on [the plaintiff]." *Flynn v. People's Choice Home Loans, Inc.*, 440 F. App'x 452, 457 (6th Cir. 2011).

13

As a general rule, a district court may not award damages without an evidentiary hearing unless "the amount claimed is a liquidated sum or one capable of mathematical calculation." *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993); *see Leedo Cabinetry v. James Sales & Distribution, Inc.*, 157 F.3d 410, 414 (5th Cir. 1998) (no hearing where damages "capable of mathematical calculation" based on evidence in affidavits and supporting documentation). If damages, including fees, cannot be computed with certainty, a district court may grant a motion for default judgment on the issue of liability and, "to the extent that it requests default without proof of damages," deny the motion without prejudice, subject to additional argument or evidence from the plaintiff. *See, e.g., Yan Fang Jiang v. Hannon Grp., Ltd.*, No. 14-cv-309, 2015 WL 5010501, at *4 (E.D. Wis. Aug. 21, 2015) (granting motion for default judgment on issue of liability and denying on issue of damages); *I.U.O.E. Local 68 Pension Fund v. Resorts Int'l Hotel, Inc.*, No. 12-6773, 2013 WL 4042541, at *4 (D.N.J. Aug. 8, 2013) (same).

Here, Travelers' motion, which is unaccompanied by a memorandum brief and contains no citations to case law, simply asks that the Court grant "a default judgment against Defendants Peters and Nelms ... in the amount of $100,000." Doc. #31. The motion makes no effort to tie this sum to any of the facts of the case or to the specific claims. Under these circumstances, the Court concludes that the damages at issue cannot be computed with the requisite certainty. Therefore, the motion for default judgment will be denied without prejudice to the extent it requests default without proof of damages.

### III
### Motion for Hearing

Finally, Travelers seeks a hearing on its motion for default judgment. Doc. #34. Because this order resolves Travelers' motion for default judgment, a hearing on the motion is not necessary. Accordingly, the motion for hearing will be denied as moot.

# III
# Conclusion

For the reasons above, it is **ORDERED**:

1. Travelers' motion for hearing [34] is **DENIED as moot**.

2. Travelers's motion for default judgment [31] against Nelms and Peters is **GRANTED in Part and Denied in Part** such that:

    a. The motion is GRANTED to the extent it seeks to impose liability against Nelms on Counts One (Contractual Indemnity), Two (Specific Performance), Three (Breach of Contract), and Five (Conspiracy).

    b. The motion is GRANTED to the extent it seeks to impose liability against Nelms under Count Six (Fraud) and Count Seven (Conversion) for acts related to the rental of a paver and the payment of Nelms' wife's cellular phone bill. The motion is DENIED to the extent it seeks to impose liability against Nelms for fraud and conversion based on other allegations.

    c. The motion is GRANTED to the extent it seeks to impose liability against Peters on Count Five (Conspiracy).

    d. The motion is DENIED to the extent it seeks to impose liability against Peters on Counts Six (Fraud) and Seven (Conversion).

    e. The motion is DENIED to the extent it seeks to impose liability on a claim for "Assignment and Subrogation."[11]

    f. The motion is DENIED without prejudice on the issue of damages.

---

[11] However, as the Court concluded above, Travelers may recover losses caused by Peter and Nelms based on the Assignment and Release. *See* note 9, *supra*.

Travelers may file a renewed motion for default judgment on the issue of damages within fourteen (14) days of the issuance of this order.

**SO ORDERED**, this 22nd day of March, 2017.

                                              **/s/ Debra M. Brown**
                                              **UNITED STATES DISTRICT JUDGE**